UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BRAND NEW SCHOOL, LLC a Delaware
Limited Liability Company,                            :

            Plaintiff,                      :

        -against-                          :        **MEMORANDUM AND ORDER**

THE MILL GROUP, INC., a New York             :        15-CV-7904 (ALC) (KNF)
Corporation; THE MILL (FACILITY)
LIMITED; and DOES 1-10, inclusive,             :

          Defendants.                   :
-----------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 7/17/17

## BACKGROUND

In this Lanham Act action, plaintiff Brand New School, LLC ("BNS") claims false

designation of origin, false advertising and unfair competition based on its allegations that the

defendants made unauthorized copies of and used commercials that were created and produced

by the plaintiff on promotional reels the defendants submitted to several advertising agencies or

their clients in order to procure new business. The plaintiff alleges that the defendants obtained

the plaintiff's commercials from the plaintiff's former employees working currently for the

defendants, and the defendants knew or should have known that the agreements between the

plaintiff and its employees prohibited the former employees from using the plaintiff's

commercials without permission. The plaintiff asserts that the defendants removed,

intentionally, embedded service marks from the commercials to deceive potential clients

regarding the origin, design and production services being offered, and misrepresented that the

defendants were the source of those services.

1

By a letter, dated August 26, 2016, the plaintiff requested a pre-motion discovery conference pursuant to Local Civil Rule 37.2 of this court, concerning its efforts to obtain from the Mill Group, Inc. ("The Mill"): (1) "critical metadata which The Mill agreed to produce," namely, metadata for "18 reels of videos" The Mill already produced; (2) "documents identifying to whom The Mill pitched its services using Brand New School's work"; and (3) "any contracts in [The Mill's] possession between Brand New School and the former employees and related documents." At a conference, held on September 20, 2016, the Court directed The Mill to: (a) supplement its metadata disclosure; (b) provide a list of companies to whom The Mill made pitches; and (c) provide a copy of any contract between the plaintiff and any of its former employees. On October 19, 2016, the Court conducted a discovery-related conference with the parties and permitted the plaintiff to make a motion to compel, if necessary. Before the Court is the plaintiff's motion, "pursuant to Federal Rules of Civil Procedure 26 and 37," based on The Mill's "refusing to provide non-privileged documents that are relevant to the subject matter of this action without justification," for an order compelling production of documents and extending the dates to complete fact discovery to May 1, 2017, and expert discovery to September 1, 2017. The Mill opposes the motion.

## PLAINTIFF'S CONTENTIONS

The plaintiff seeks to compel the disclosure of: (1) "commercials produced at BNS that are in the possession, custody and control of The Mill and the sample reels embodying those commercials, which The Mill admits to using to promote and pitch its services"; (2) "a list identifying every advertising agency, potential client and client to whom The Mill, or someone on its behalf, sent a sample reel containing BNS commercials"; (3) "all correspondence relating to BNS commercials and the former BNS employees who provided the BNS commercials to The

2

Mill"; and (4) "metadata relating to the BNS commercials and sample reels on which they are embodied." The plaintiff contends that it requested "documents identifying all the advertising agencies, clients, potential clients and others from whom The Mill solicited (or is soliciting) business using a commercial produced at BNS ('BNS Work Product'). [Jennifer] Leland ['Leland'] Decl., ¶ 7 (Request Nos. 14, 16, 8,[1] 24)." The plaintiff asserts that, in response to these document requests, The Mill agreed to produce "representative documents sufficient to identify persons to whom were sent commercial reels sent to, prepared for, or requested by existing or potential clients of Defendants since the creation of The Mill+ (as alleged by Plaintiff in the Complaint at Paragraph 2) which include Prior Employment Work Product." On September 20, 2016, The Mill informed the Court that the information the plaintiff requested is contained in metadata from Wiredrive's storage system that The Mill already produced to the plaintiff. However, the plaintiff argued that it was not apparent that Wiredrive's metadata was complete and the plaintiff could not ascertain from that metadata "to whom The Mill pitched its services using BNS Work Product." The Court directed The Mill to "assemble a list" that would identify "to whom [The Mill] made pitches" and produce it to the plaintiff by September 23, 2016. According to the plaintiff, The Mill failed to produce a list; instead, it "simply reproduced the same vague and incomplete information it previously produced (*i.e.* the WireDrive metadata) in a different format." The Mill produced "112 individual CSV files containing the following 'categories' of information taken solely from metadata it requested from Wiredrive (and not from any search of its own servers): Recipient, Page views, Forwards, Forwarded from, Last viewed, and Expiration Date." The plaintiff asserts that in those 112 files "[t]here are no

---

[1] It appears that the plaintiff's reference to request No. 8 is erroneous because ¶ 7 of the declaration by Jennifer W. Leland does not specify request No. 8, but specifies request No. 18, which seems to be consistent with the plaintiff's argument concerning production of "a list identifying everyone who received BNS's work from The Mill or The Mill's representatives." The Court will assume that the plaintiff intends to reference request No. 18 when referencing request No. 8.

addresses or telephone numbers provided and, in most instances, unless the recipient is an employee or former employee of The Mill, the complete name of the recipient is not provided." Furthermore, "[i]n most cases, the recipient is simply identified as an e-mail address with no further identifying information." The plaintiff asserts that, "[w]ithout full names, company names, addresses and telephone numbers, Plaintiff has no way of identifying any of these people, let alone serving necessary subpoenas." The plaintiff maintains that "the 112 files provided by The Mill only purport to show who received a link to a reel directly from Wiredrive's server as accessed through WireDrive's website," but they "do not identify everyone to whom The Mill pitched its services using BNS Work Product which Plaintiff must have to pursue its case." For example, the majority of the recipients included on the 112 files are The Mill's current or former employees and the plaintiff "needs to know to whom these employees and former employees forwarded the link from their email account at The Mill. To ascertain this, The Mill needs to search its own files, including the e-mail correspondence of its own employees and former employees which it does not appear to have searched. Searching the files of WireDrive was necessary, but not sufficient." The plaintiff contends:

> Illustrative of this point, the Content Producer at the advertising agency KBS was recently deposed in connection with The Mill's use of BNS Work Product to solicit the Boar's Head commercial which instigated this suit. The Mill did produce "representative" information showing that it sent links to three different sample reels to KBS in connection with that pitch. All of the links were sent by e-mail from various employees of The Mill to KBS, Leland Dec., ¶ 15, Ex. D. None of those appear on the 112 separate WireDrive files because the links were sent by The Mill from a work e-mail account, not from WireDrive. *Id.*, Indeed, KBS does not show up as a recipient on any of the 112 WireDrive files. Jennifer W. Leland ["Leland"] Decl., ¶ 13.

The plaintiff's attorney, Leland, explains in her declaration that, subsequent to the September 20, 2016 conference with the Court, The Mill's counsel stated, <u>inter alia</u>, in an e-mail to her:

4

> We maintain our objections to the relevance and scope of the discovery BNS is seeking regarding the persons to whom Prior Employment Work Product was provided. Everyone who received such material does not have information relevant to the parties' claims and defenses. Rather, those people who received Prior Employment Work Product and thereupon evidenced or otherwise communication [sic] some alleged or claimed confusion as to the source of such materials would have information that is possibly relevant here.

The plaintiff asserts that it is not required to establish "actual confusion" to prevail in this action and withholding discovery on that basis is improper. Moreover, "it is not for The Mill to decide whether the recipients of the information were actually or likely to be confused – it is for the Court or jury to decide based on the direct and circumstantial evidence." The plaintiff requests an order directing The Mill "to produce a complete list of [everyone to whom The Mill provided BNS Work Product when pitching its services] that sets forth the full name of the recipient, including the company that he or she works for and all known contact information, including address, telephone and e-mail address."

The plaintiff contends that The Mill concealed and withheld in its possession, custody and control, intentionally, the plaintiff's work product. In response to the plaintiff's document request Nos. 1 and 3, The Mill produced "17 sample reels," initially, followed by a chart, "identifying eighty-three sample reels containing commercials produced at BNS, including reels containing commercials Mr. [Christopher] Palazzo ['Palazzo'] worked on. (['][The Mill's BNS Chart'). Leland Decl., Ex. I." Given that "The Mill deleted Mr. Palazzo's work and The Mill's BNS Chart was the only evidence of which of his commercials were included on which reels, any reliance by The Mill on the work product doctrine would have been improper." The plaintiff requests that The Mill be compelled to produce the reels identified on The Mill's BNS chart, "along with any other BNS Work Product in its possession, custody or control," including those of "any other third party under The Mill's control or the control of its representatives or agents."

Furthermore, The Mill sent two reels to KBS, but failed to produce the second reel entitled Mill + Editorial in connection with the Boar's Head commercial, and it should be ordered to produce it, if it exists, or identify what was on it.

The plaintiff asserts that The Mill should be compelled to produce communications: (i) "internal and with third parties, relating to BNS, Messrs. Palazzo and [Mario] Stipinovich ['Stipinovich'] and the sample reels containing BNS Work Product," all of which was encompassed by the plaintiff's document request Nos. 26, 74, 75, 77; and (ii) "mentioning Messrs. Palazzo and Stipinovich, BNS, or any commercials or sample reels containing BNS Work Product," as requested in document request Nos. 28, 34, 35, 40, 43, 51, 86 and 87. The plaintiff contends that the requested communications are relevant "to show what clients and jobs The Mill was pitching to and biding for using BNS's Work Product," what jobs The Mill was awarded using the plaintiff's work product, the representations made by the Mill concerning the commercials on the reels and the role former employees of the plaintiff had in connection with the commercials on the reels.

The plaintiff requests that all metadata associated with the commercials and reels related to the plaintiff's work product, in The Mill's possession, custody and control, be produced, since The Mill never objected to the metadata request articulated in the "Instructions" section of the plaintiff's "Discovery Requests." Furthermore, The Mill's BNS chart should be produced in "native" format "i.e., as an Excel spreadsheet," pursuant to the instructions in the plaintiff's discovery requests.

The plaintiff contends that it contemplates significant third-party discovery, delayed by The Mill's belated document production, which it will not have sufficient time to complete prior to January 11, 2017, the current discovery deadline. Furthermore, defendant "The Mill UK has

6

not yet answered the Complaint and has requested permission to file a motion to dismiss for lack

of personal jurisdiction," for which limited jurisdictional discovery has been ordered by the

assigned district judge. The plaintiff requests that "the fact discovery cut-off be extended to

May 1, 2017, the parties be required to disclose the identity of their experts on or before July 1,

2017, and the expert discovery cut-off be extended to September 1, 2017."

## THE MILL'S CONTENTIONS

The Mill contends that the plaintiff's motion should be denied because it seeks

documents that: (a) "have been produced"; (b) "are not in the possession, custody, or control of

the Mill US"; (c) "do not exist"; (d) are not relevant and proportional to the needs of the case; or

(e) "may be relevant if they exist but the effort required to attempt to determine if documents

exist would not be proportional to the needs of the case." The Mill maintains it has produced all

the reels in its possession, custody or control, as identified in The Mill's BNS chart. It asserts

that, after Palazzo terminated his employment with The Mill, The Mill "inadvertently deleted all

of Mr. Palazzo's Prior Employment Work Product," and no longer has "any such files." The

Mill has searched Wiredrive that The Mill uses to store commercials and reels for all reels

identified in The Mill's BNS chart and all "the reels that exist and contain Prior Employment

Work Product were produced." The plaintiff alleged that "The Mill uploaded [Prior

Employment] Work Product to Beam." However, The Mill contends that it searched "Beam for

any Prior Employment Work Product, and there are no videos or reels on Beam that contain

Prior Employment Work Product." The Mill contends it produced three commercials

"containing Mr. Palazzo's Prior Employment Work Product," including "the Lenovo

commercial that was the subject of the pitch for Boar's Head." As it concerns the plaintiff's

request to produce works by Massimo Losito, that request is improper because he was never an

7

employee of the plaintiff and no commercials or reels containing his prior employment work product exist.

The Mill asserts that the plaintiff's request for production of e-mail correspondence related to Palazzo and Stipinovich and the sample reels containing their prior employment work product seeks information that is not relevant to this action and is not proportional to this case. According to The Mill, the plaintiff did not explain why all documents related to the plaintiff are relevant. Given that The Mill and the plaintiff are competitors, "there are likely a significant amount of emails relating to BNS that have nothing to do with the claims in the Complaint" and reviewing them would be "a significant waste of time and money." Similarly, "a search for emails relating to Messrs. Palazzo and Stipinovich also would not be relevant or proportional to the case" since "[a]n email search for their names would generate substantial numbers of emails containing irrelevant information, such as information relating to salary, expense reimbursement, benefits and projects that have nothing to do with Prior Employment Work Product." Furthermore, any communication relating to how The Mill represented Palazzo's role on the 12 commercials he did not direct is irrelevant to the plaintiff's claims, since "there are no allegations in the Complaint regarding misrepresentations about Mr. Palazzo's role, skills, or experience." The Mill asserts that the plaintiff's "request for emails relating to the sample reels, while relevant, is not proportionate [sic] to the needs of the case." It explains:

> Reels are not physical items, but rather a compilation of individual video spots.
> . . . The Mill US used Wiredrive to create all of the reels that contained Prior
> Employment Work Product. When a reel is created using Wiredrive, Wiredrive
> creates a link to a particular IP [Internet protocol] address, and each reel has a
> unique alphanumeric combination (the 'Wiredrive File Name Link'). . . . For each
> of these reels containing Prior Employment Work Product that The Mill US was
> able to locate, The Mill US was able to identify the Wiredrive File Name Link
> . . . . Using the Wiredrive File Name Link for each such reel, The Mill US then
> conducted a search across its email server to search for the Wiredrive File Name

8

Link associated with each of the reels containing Prior Employment Work Product on Wiredrive . . . The Mill US has not located any emails associated with any of the Wiredrive File Name Links associated with Prior Employment Work Product. . . . [T]he only way to locate any emails associated with the Prior Employment Work Product would be to manually search the mailboxes of each employee of The Mill US that received a Wiredrive link containing Prior Employment Work Product. . . . Such a process would require reviewing every email to determine if a Wiredrive File Name Link containing Prior Employment Work Product was renamed or somehow given a different designation before it was used in any other way by The Mill US and then sent to an advertising agency or company for a pitch. . . . That process would be extremely time consuming and expensive because The Mill US would have to review over four years' worth of email to search for an unknown link and view every link that was found in order to try to determine if that link was for a reel that contained Prior Employment Work Product. Such an endeavor would require the manual review of what is estimated to be thousands and thousands of emails across over 250 employee email boxes.

The Mill contends that it does not maintain a list of people who received reels containing

prior employment work product and it "should not be required to create such a document." The

Mill produced the metadata for each reel containing prior employment work product "both as

screenshots of the Wiredrive report for each reel as well as in Excel spreadsheets for each reel

because BNS requested the information in that format." The Mill "has searched its email system

for the Wiredrive File Name Link for each reel that it located," but it "has not located any

responsive emails." The Mill asserts it has no access to any files maintained by Free Agents and

"cannot produce any documents or list of recipients of reels based on files maintained by Free

Agents." Moreover, concerning the reel entitled Mill + Editorial that The Mill sent to KBS, it is

irrelevant because it does not contain any prior employment work product.

The Mill contends it produced metadata for three out of four reels the plaintiff identified

that contain prior employment work product. The Mill was unable to locate any metadata for

one reel. The Mill asserts that the spreadsheet identifying reels containing prior employment

work product should not be produced in native format because part of it that was redacted

9

concerns irrelevant information, and the plaintiff failed to present any argument explaining why it needs the native format.

With respect to the plaintiff's request to extend discovery deadlines, The Mill contends good cause exists to extend the time for discovery because the assigned district judge ordered, on October 24, 2016, limited jurisdictional discovery concerning defendant The Mill (Facility) Limited's motion to dismiss and the Mill (Facility) Limited "will not be engaging in any merits-related discovery until its motion is decided." The assigned district judge directed the parties to file a status report on January 6, 2017. The Mill asserts that extending the discovery deadlines by one month for fact discovery and an additional six weeks for expert discovery would be warranted at this time.

## PLAINTIFF'S REPLY

The plaintiff contends it is withdrawing its request for the reel entitled Mill + Editorial. It asserts that The Mill did not produce all sample reels in its possession, custody or control because it produced only 17 sample reels stored on Wiredrive, but did not produce all reels relating to Palazzo since the plaintiff's work product on those reels was "inadvertently deleted," and "it is undisputed that there are additional sample reels beyond those stored on Wiredrive," namely, 66 sample reels are identified in The Mill's BNS chart. Although The Mill claims that those sample reels were not produced because Palazzo commercials embodied on them were deleted, that does not render the sample reel irrelevant. The plaintiff "needs to be able to show all of the commercials on each of the sample reels sent to advertising agencies, clients and potential clients to the jury so that it can decide the relevant importance of each commercial and what portion of The Mill's . . . revenues and profits is not attributable to its unlawful conduct." The plaintiff contends that, "[i]f The Mill is unwilling to produce the other commercials, it

10

should be barred from arguing that the damages should be apportioned because it was awarded a job, in whole or in part, as a result of any of the non BNS commercials embodied on any sample reel." According to the plaintiff, The Mill does not dispute that it has the ability to obtain documents from Free Agents and that Free Agents has documents containing the plaintiff's work product; thus, The Mill "must obtain documents from" Free Agents as well as "all of their [sic] sales agents and representatives."

The plaintiff maintains that The Mill's metadata spreadsheet is incomplete because it does not provide complete contact information for the recipients and "many of the recipients are not advertising agencies or clients but employees of The Mill." The plaintiff asserts that, "once the employee receives the link to the sample reel someone at The Mill then sends the sample reel to an advertising agency potential client or client. The metadata produced does not tell BNS to whom these employees sent the sample reels." Although the metadata shows who sent or received a link directly from Wiredrive's server, it does not identify everyone to whom The Mill or its agents pitched The Mill's services using the plaintiff's work product. The plaintiff asserts that "The Mill admits that its own e-mail records would reflect to whom it pitched business using BNS Work Product, including BNS Work Product embodied on sample reels created somewhere other than Wiredrive." The plaintiff asserts that The Mill exaggerates what is required. For example, The Mill claims it would have to review the e-mail boxes of 250 employees, but "only a subset of those employees are used by The Mill to pitch new business." Furthermore, The Mill limited its search to "Wiredrive File Name Link" but should have also searched for "the actual names of the sample reels or 'presentations.'" The plaintiff asserts that the burden on The Mill is proportional to the needs of the case and the importance of discovery

for the plaintiff's claims given that the information "is solely in possession of The Mill and its agents."

The plaintiff contends that the e-mail correspondence related to its work product is relevant to show, not only to whom The Mill sent the plaintiff's work product, but also: (1) "what clients and jobs The Mill was pitching to and bidding using BNS Work Product"; (2) "what jobs The Mill was awarded using BNS Work Product"; and (3) "the representations made by The Mill regarding the commercials on the reels and the role Messrs. Palazzo and Stipinovich had in connection with those commercials." The plaintiff asserts that The Mill's spreadsheet contains several director's reels, and "Palazzo directed only three of the 15 BNS commercials The Mill admits to using," while Stipinovich "co-directed only 5 of the 8 BNS commercials The Mill admits to using." To the extent that the e-mail correspondence includes any representations regarding Palazzo and Stipinovich or their roles, they are relevant to the plaintiff's claims and "encompassed within the allegation that The Mill is attempting to defraud advertising agencies and their clients by falsely representing that BNS Work Product is the product of The Mill and representative of the nature, characteristics and qualities of The Mill's goods and services." The plaintiff maintains that The Mill conceded that the request for e-mail communications relating to sample reels is relevant because it agreed to produce documents to show communications between The Mill and any third parties, but now refuses to do so, claiming that the request is not proportional to the needs of the case because of the burden of searching e-mail accounts of 250 employees. The plaintiff contends that The Mill is attempting to mislead the Court concerning the burden, as "it appears that there are approximately two dozen employees or former employees who have relevant information." Moreover, e-mail correspondence relating to Palazzo and Stipinovich is relevant to the claims that The Mill is using the plaintiff's work

12

product to obtain business by misrepresenting who produced and created the work or the roles of Palazzo and Stipinovich had in connection with the plaintiff's work product. The plaintiff is willing to narrow the scope of its request to communications concerning: (a) "BNS Work Product"; (b) "The Mill's use of commercials created or produced by BNS or former employees of BNS to, among other things, pitch new business for The Mill"; (c) "the role that Mr. Palazzo or Mr. Stipinovich had in connection with BNS Work Product"; and (d) "this litigation." The plaintiff contends that The Mill waived its objection that the spreadsheet be produced in native format, which is what Rule 34 of the Federal Rules of Civil Procedure requires.

Concerning the plaintiff's request for an extension of time to complete discovery, the plaintiff contends that The Mill did not start producing documents until August 16, 2016, and, before it can determine whom to depose, the plaintiff needs to have all the sample reels and the names of the advertising agencies and potential clients who received the sample reels and representations made by The Mill regarding them. Assuming that The Mill will produce information by the end of the year, the plaintiff needs time to review it, take depositions and "complete discovery on damages."

## LEGAL STANDARD

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

13

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if . . . a party fails to produce documents." Fed. R. Civ. P. 37(a)(3)(B)(iv). "For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

> Fed. R. Civ. P. 37(a)(5)(A).

Motions to compel, pursuant to Fed. R. Civ. P. 37, are left to the sound discretion of the court. See United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

Where a scheduling order has been entered, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Whether good cause exists turns on the 'diligence of the moving party.'" Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (citation omitted).

### APPLICATION OF LEGAL STANDARD

*Identity of Everyone to Whom The Mill Provided BNS Work Product When Pitching Its Services (Document Request Nos. 14, 16, 18 and 24)*

The Mill's: (a) relevance and scope objections, made after the September 20, 2016 conference, concerning the identity of each person to whom The Mill pitched its services using commercials produced at BNS; and (b) argument that it does not maintain a list of people who received reels containing prior employment work product and "should not be required to create

14

such a document" are meritless because the Court ruled previously on such objections when it directed The Mill to produce "a list" identifying such persons, on September 20, 2016. Neither the plaintiff's document request Nos. 14, 16, 18 and 24 nor the Court limited The Mill's production to Wiredrive and Wiredrive-related information only. The plaintiff presented evidence showing that the metadata associated with Wiredrive does not identify everyone to whom The Mill or its agents pitched The Mill's services using the plaintiff's work product. The Mill's objection to the time frame is sustained because the plaintiff alleges wrongful conduct "since the creation of an in-house division called The Mill +," and that is the proper time frame for producing relevant documents in response to the plaintiff's document request Nos. 14, 16, 18 and 24. The Court finds that the discovery sought from The Mill through these document requests is proportional to the needs of the case. Accordingly, The Mill must respond to the plaintiff's document request Nos. 14, 16, 18 and 24, including producing not only Wiredrive or Wiredrive-related information, but also information from The Mill's e-mail correspondence or any other source under its possession, custody or control.

### *Reels Identified on Exhibit I to the Leland Declaration (Document Request Nos. 1 & 3)*

Jamie Alexander Smith ("Smith"), The Mill's general counsel, submitted a declaration in opposition to the motion, in which he contends that "The Mill US and counsel searched for each of the reels identified in the spreadsheet," Exhibit I to Leland's declaration, and "[a]ll of the reels that could be located were produced to BNS. For any of the reels relating to Chris Palazzo, those reels were missing Prior Employment Work Product because those spots were inadvertently deleted after Mr. Palazzo ceased to be employed by The Mill US and, therefore, the reels were not produced." The plaintiff's document request: (a) No. 1 seeks materials, including reels, "compiled, created or produced by or on behalf of The Mill . . . which include any commercials,

15

images and/or other material created or produced by or on behalf of BNS or otherwise derived from any material created or produced by or on behalf of BNS"; and (b) No. 3 seeks materials, including reels, "compiled, created or produced by or on behalf of The Mill . . . which include a commercial, or any part thereof, created, in whole or in part, by any person while working for BNS as either an employee or independent contractor, including but not limited to, any such material created, in whole or in part, by Chris Palazzo, Mario Stipinovich and/or Meg Sweet." The Mill objected that document request No. 3 is "unduly burdensome to the extent it is cumulative and seeks documents encompassed by Request No. 1," and the Court agrees. Since the plaintiff's document request No. 1, which subsumes document request No. 3, seeks only materials "which **include** any commercials . . . created and produced by or on behalf of BNS" The Mill need not produce materials that **do not** "include any commercials . . . created and produced by or on behalf of BNS."

However, The Mill's contentions that: (i) "The Mill US asked Free Agents, a third[-] party sales agent engaged by The Mill US, to search for any reels or individual video files containing Prior Work Employment Product"; and (ii) [a]ll such files located by Free Agents and supplied to The Mill US have been produced by The Mill US to BNS" are undermined by Free Agents' declaration in opposition to the plaintiff's motion to compel compliance with the plaintiff's subpoena (Docket Entry No. 77). In that declaration, Free Agents contend that links to Stipinovich's three spots that he created while he was working for BNS were provided to The Mill. However, the plaintiff contends it "never received the three Stipinovich spots" from The Mill. Thus, the plaintiff has evidence that The Mill did not produce all "materials used, compiled, created or produced by or on behalf of The Mill, . . . which include any commercials, images and/or other material created or produced by or on behalf of BNS," as requested in the

16

plaintiff's document request No. 1. Furthermore, the record evidence shows that Wiredrive is not the only file sharing platform that The Mill uses, as The Mill represented to the Court, at the October 19, 2016 conference, that it also uses "Dropbox," and in opposition to this motion it contends it uses "Beam." The Mill stated it "has searched Beam for any Prior Employment Work Product, and there are no videos or reels on Beam that contain Prior Employment Work Product," and nothing to produce. To the extent that The Mill did not submit any evidence concerning the search of its other file sharing platforms used, apart from Wiredrive and Beam, including but not limited to "Dropbox," it must conduct a search and produce any relevant, nonprivileged materials to the plaintiff, in response to the plaintiff's document request No.1, which subsumes document request No. 3. However, The Mill's objection to the time frame in the plaintiff's document requests is sustained because the plaintiff alleges wrongful conduct "since the creation of an in-house division called The Mill +," and that is the proper time frame for production of relevant documents in response to the plaintiff's document request Nos. 1 and 3.

The plaintiff did not request, in its document request Nos. 1 & 3, that The Mill produce any materials "held by third parties" or "in the possession, custody or control [of] any other third party under The Mill's control or the control of its representatives or agents." The plaintiff's contentions that "The Mill is obligated to obtain any BNS Work Product, including sample reels, from Free Agents who, in turn, may have to retrieve such documents from Interbuds" is meritless because no such request is contained in the plaintiff's document request Nos. 1 and 3. The plaintiff's argument that "The Mill was obligated under Rule 34 to seek information from Free Agents and House of Representatives, . . . as well as any other sales agents or representatives who sent sample reels to others on behalf of The Mill from Wiredrive or some

17

other site," is not supported by Rule 34 of the Federal Rules of Civil Procedure and the plaintiff

failed to make citation to any other legal authority in its support. The plaintiff can obtain

relevant, nonprivileged materials from Free Agents because the plaintiff's motion to compel Free

Agents' compliance with the subpoena was granted previously. The plaintiff's contention that

"The Mill uses other sales agents, including but not limited to, The House of Representatives and

Stephanie Reps, and must obtain documents from all of their sales agents and representatives" is

unsupported by evidence and meritless, since no such request is contained in the plaintiff's

document request Nos. 1 and 3, and the plaintiff's exhibits, submitted in reply, do not support

the contention. Accordingly, The Mill need not produce any materials "held by third parties."

### *Communications Regarding BNS Work Product (Document Request Nos. 26, 28, 34, 35, 40, 43, 51, 74, 75, 77, 86 and 87)*

Document Request No. 26

The plaintiff contends, in its memorandum of law, that it requested The Mill to produce

> all documents evidencing, concerning or consisting of any communications between The Mill, or any person on behalf of The Mill, on the one hand, and all persons to whom The Mill or any other person on behalf of The Mill gave, sent or provided access to any reels which include any BNS commercials or videos, on the other hand, relating or referring to either (a) the possibility of The Mill producing a commercial, or rendering services, for such person or (b) the content of any portfolios, videos, video reels, sample reels, director reels, commercials or marketing or promotional materials. Leland Dec., ¶ 7 (Request No.26). . . . To date, other than communications with KBS, The Mill has not produced any documents responsive to this Request.

Leland contends, in her declaration, that paragraph 7 of her declaration sets forth "the specific

Requests and Responses at issue in Plaintiff's Motion." However, no document request No. 26

is quoted in Leland's declaration and Leland did not attach to her declaration the plaintiff's

document requests and The Mill's responses and objections, as required by Local Civil Rule 5.1

of this court. Moreover, the plaintiff failed to quote or submit the "Definitions and Instructions"

18

contained in its document requests served on The Mill and it did not submit The Mill's "General Objections and Objections to Definitions and Instructions," which The Mill incorporated in its specific objections. Having submitted no evidence of the allegedly disputed document request No. 26 and The Mill's response and objections thereto, no basis exists to compel The Mill to respond to the plaintiff's document request No. 26.

The plaintiff contends that The Mill should be ordered to produce: (1) "all internal communications at The Mill," as requested in the plaintiff's document request Nos. 74, 75 and 77; and (2) "all communications mentioning Messrs. Palazzo and Stipinovich, BNS, or any commercials or sample reels containing BNS Work Product," as requested in the plaintiff's document request Nos. 28, 34, 35, 40, 43, 51, 86 and 87, because they

> are relevant to show not only to whom The Mill sent BNS Work Product but to show what clients and jobs The Mill was pitching to and biding for using BNS Work Product, what jobs The Mill was awarded using BNS Work Product and the representations made by The Mill regarding the commercials on the reels and the role former BNS employees, including, but not limited to, Messrs. Palazzo and Stipinovich, had in connection with those commercials.

### Document Request Nos. 74, 75 and 77

The plaintiff's document request No. 74 seeks "[a]ll documents, evidencing, concerning or consisting of any of The Mill's internal communications on or after January 1, 2010 relating or referring to BNS, Chris Palazzo, Mario Stipinovich and/or Meg Sweet." The plaintiff's document request No. 75 seeks "[a]ll documents evidencing, concerning or consisting of any of The Mill's internal communications on or after January 1, 2010 relating or referring to the content of any sample reels to be sent to any person in connection with pitching new business." Document request No. 77 seeks "[a]ll documents evidencing, concerning or consisting of any of The Mill's internal communications on or after January 1, 2015 relating or referring to The

19

Mill's use of any portfolios, videos, video reels, sample reels, director reels, commercials or other materials created or produced by someone other than The Mill."

The Mill's objections that document request Nos. 74, 75 and 77 are vague, overly broad and unduly burdensome are sustained. The plaintiff neither defined nor explained what it means by "documents evidencing, concerning or consisting of any of The Mill's internal communications." Apart from the vagueness of the words "[a]ll documents evidencing, concerning or consisting of any of The Mill's internal communications," the plaintiff failed to show how seeking "[a]ll documents . . . of any of the Mill's internal communications," without limiting the request to those documents pertinent to this action, is relevant and proportional to the needs of this case. Similarly, the plaintiff's request for "[a]ll documents . . . of any of the Mill's internal communications" "relating or referring to BNS, Chris Palazzo, Mario Stipinovich and/or Meg Sweet" is beyond the scope of the relevant matter in this action and not proportional to the needs of this case. Moreover, the plaintiff's requests, limited solely in time, for "[a]ll documents . . . of any of the Mill's internal communications": (1) "relating or referring to the content of any sample reels to be sent to any person in connection with pitching new business," document request No. 75; and (2) "relating or referring to The Mill's use of any portfolios, videos, video reels, sample reels, director reels, commercials or other materials created or produced by someone other than The Mill," document request No. 77, bear no relevance to the claims and defenses in this action and are not proportional to the needs of this case. The plaintiff's conclusory arguments that "BNS is entitled to all communications" because they are relevant and its requests are not burdensome because "only a subset of ['250 plus employees'] are used by The Mill to pitch new business," are not sufficient to show that its requests are relevant to this action and proportional to the needs of this case and not burdensome. The

plaintiff supports its contention that "only a subset of ['250 plus employees'] are used by The Mill to pitch new business" by pointing to The Mill's responses to the plaintiff's interrogatory Nos. 3 and 4 and its "Amended Initial Disclosures," in which, according to the plaintiff, The Mill identified approximately 26 employees with knowledge of information described in those interrogatories. However, document request Nos. 74, 75 and 77 are neither identical to the plaintiff's interrogatory Nos. 3 and 4, nor similarly limited as those interrogatories are, and their scope exceeds greatly the scope of the plaintiff's interrogatory Nos. 3 and 4. Accordingly, The Mill need not respond to document request Nos. 74, 75 and 77.

    Document Request Nos. 28, 34, 35, 40, 43, 51, 86 and 87

       The plaintiff's document request No. 28 seeks:

> All documents evidencing, concerning or consisting of any communications, on or after January 1, 2010, between The Mill, or any person on behalf of The Mill, on the one hand, and all persons to whom The Mill or any other person on behalf of The Mill gave, sent or provided access to portfolios, videos, video reels, sample reels, director reels, or marketing or promotional materials and/or other materials which include a commercial, or any part thereof, created or produced, in whole or in part, by any person while working for BNS as either an employee or independent contractor, including, but not limited to, Chris Palazzo, Mario Stipinovich and/or Meg Sweet, relating or referring to either (a) the possibility of The Mill producing a commercial, or rendering services, for such person, or (b) the content of any portfolios, videos, video reels, sample reels, director reels, commercials or marketing or promotional materials.

The Mill objected that the plaintiff's document request No. 28 is overly broad, unduly burdensome, as it seeks "all" documents "without regard for whether such documents relate to or are proportional to the needs of this case" and it is beyond the time scope of the allegations in the complaint, as well as vague, with respect to the meaning of "relating or referring to either (a) the possibility of The Mill producing a commercial, or rendering services, for such person" and "relating or referring to . . . the content of any portfolios, videos, video reels, sample reels, director reels, commercials or marketing or promotional materials." To the extent that the

21

plaintiff's document request No. 28 is understandable, The Mill's objections are sustained because document request No. 28 is vague, overly broad and unduly burdensome. The Mill need not respond to the plaintiff's document request No. 28.

The plaintiff's document request No. 34 seeks "[a]ny and all notes, memos, reports, correspondence, communications and any other writing of any kind concerning The Mill's use of commercials, images and/or other materials that were created or produced by or on behalf of BNS." The Mill's objections that the plaintiff's document request No. 34 is overly broad, unduly burdensome and vague are sustained. The Mill need not respond to document request No. 34.

The plaintiff's document request No. 35 seeks "[a]ny and all notes, memos, reports, correspondence, communications and any other writings of any kind concerning The Mill's use of commercials, images and/or other materials that were created or produced, in whole or in part, by any person while working for BNS as either an employee or independent contractor." The Mill's objections that document request No. 35 is overly broad and unduly burdensome, because it seeks "any and all" as well as "any other writing of any kind," without a time limitation or a restriction to material pertinent to this action, are sustained. The Mill's objection that the plaintiff's document request No. 35 is vague, to the extent that it seeks "any other writing of any kind," is sustained. The Mill need not respond to the plaintiff's document request No. 35.

The plaintiff's document request No. 40 seeks:

All documents evidencing, concerning or consisting of any communications that occurred on or after January 1, 2010 between The Mill and any former employee or independent contractor of BNS, including, but not limited to, Chris Palazzo, Mario Stipinovich and/or Meg Sweet, concerning any portfolios, videos, video reels, sample reels, commercials and/or marketing or promotional materials such employees and/or independent contractors worked on while at BNS.

The Mill objected on various grounds, including that document request No. 40 is overly broad and unduly burdensome because it seeks documents other than those relating to prior employment work product and it seeks "all" documents, without regard for whether such documents relate to and are proportional to the needs of this case. The Mill's objections that the plaintiff's document request No. 40 is overly broad and unduly burdensome are sustained. The Mill need not respond to document request No. 40.

The plaintiff's document request No. 43 seeks:

All documents evidencing, concerning or consisting of any communications that occurred on or after January 1, 2015 between The Mill and any former employee or independent contractor of BNS, including, but not limited to, Chris Palazzo, Mario Stipinovich and/or Meg Sweet concerning BNS's objection to The Mill's use of commercials created or produced by BNS or former employees of BNS to, among other things, pitch new business for The Mill.

The Mill objected on the same grounds that are included in The Mill's response to the plaintiff's document request No. 40. The Mill's objections are sustained because the plaintiff's document request No. 43 is overly broad and unduly burdensome and not proportional to the needs of this case. Moreover, the Court finds that the plaintiff's document request No. 43 is vague because it seeks all documents "concerning BNS's objection to The Mill's use of commercials created or produced by BNS or former employees of BNS to, among other things, pitch new business for The Mill," since the meaning of "among other things" is neither defined nor explained anywhere. Accordingly, The Mill need not respond to the plaintiff's document request No. 43.

The plaintiff's document request No. 51 seeks:

All documents evidencing, concerning or consisting of any communications, on or after January 1, 2010, between The Mill or any person on behalf of the Mill, on the one hand, and Free Agents, on the other hand, relating or referring to Chris Palazzo, Mario Stipinovich and/or Meg Sweet and/or any portfolios, videos, video reels, sample reels, director reels, commercials or marketing or promotional materials created or produced by Chris Palazzo, Mario Stipinovich and/or Meg Sweet.

23

In response to the plaintiff's document request No. 51, The Mill objected on various grounds and stated it was willing to produce

documents sufficient to show communications concerning commercial reels sent to, prepared for, or requested by existing or potential clients of Defendant since the creation of The Mill + (as alleged by Plaintiff in the Complaint at Paragraph 2) which include Prior Employment Work Product by Christ Palazzo, Mario Stipinovich and/or Meg Sweet sent or made available to Free Agents.

In its opposition to the motion, The Mill takes the position that the plaintiff's "request for production of email seeks documents that are not relevant or proportional to the needs of the case." In reply, the plaintiff contends it "is willing to narrow the scope of its request to include communications concerning (i) BNS Work Product, (ii) The Mill's use of commercials created or produced by BNS or former employees of BNS to, among other things, pitch new business for The Mill, (iii) the role that Mr. Palazzo or Mr. Stipinovich had in connection with BNS Work Product and (iv) this litigation." The Mill conceded in its response to the plaintiff's document request No. 51 that the request seeks relevant communications, not limited to an e-mail format. The Court is not convinced that the "role that Mr. Palazzo or Mr. Stipinovich had in connection with BNS Work Product" is relevant to the allegations in the complaint. The plaintiff's request for "communications concerning . . . this litigation," without any limitation, appears to be overly broad and to encompass information that may be privileged or protected. In light of the plaintiff's narrowing of the scope of its document request No. 51, The Mill shall produce to the plaintiff any communications, during the relevant time period as explained above, concerning (i) the plaintiff's work product; and (ii) The Mill's use of the plaintiff's work product to pitch new business for The Mill.

The plaintiff's document request No. 86 seeks:

All documents evidencing, concerning or consisting of any communications, on or after January 1, 2010, between you and any person relating or referring to any

pitches or proposals for The Mill services' or work or the content of any portfolios, videos, video reels, sample reels, director reels, commercials or marketing or promotional materials.

The Mill objected, inter alia, that document request No. 86 is: (a) overly broad and unduly burdensome, to the extent it seeks all and any communications with any person, without regard to whether such documents relate or are proportional to this case; and (b) the phrase "pitches or proposals" is "vague, undefined, unqualified [and] subject to multiple interpretations." The Mill's objections are sustained because the plaintiff's document request No. 86 is not limited to documents pertinent to this action, not proportional to the needs of this case and vague. The Mill need not respond to document request No. 86.

The plaintiff's document request No. 87 seeks "[a]ll documents evidencing, concerning or consisting of any communications, on or after January 1, 2010 between The Mill and any person relating or referring to BNS." The Mill objected, inter alia, that document request No. 87 is overly broad and unduly burdensome. The Mill's objections are sustained because the plaintiff's document request No. 87 is not limited to documents pertinent to this action and not proportional to the needs of this case. The Mill need not respond to document request No. 87.

***Metadata Relating to All BNS Work Product in The Mill's Possession, Custody or Control***

The plaintiff contends that its discovery requests' "Instructions" included the following instruction to which The Mill did not object: "MS Excel documents or video/audio files [shall] be produced as native files as they are kept in the ordinary course of business and accompanied by sufficient metadata to identify the document file type (file extension), the original file path, the original file name, author, date created, dates modified and date last accessed." The Mill contends that it produced the information "both as screenshots of the Wiredrive report for each reel as well as in [an] Excel spreadsheet for each reel because BNS requested the information in

25

that format." The Mill does not support its contention that the plaintiff "requested the information in that format." The Mill did not object to the plaintiff's instruction requesting that information "be produced as native files as they are kept in the ordinary course of business and accompanied by sufficient metadata to identify the document file type (file extension), the original file path, the original file name, author, date created, dates modified and date last accessed." The Mill did not produce the information in its native format accompanied by sufficient metadata, as instructed by the plaintiff. Accordingly, the information contained in the spreadsheet produced by The Mill previously must be produced in its native format, as instructed by the plaintiff.

## *Extension of Time to Complete Discovery*

The May 18, 2016 scheduling order directed that "all discovery, of whatever nature, be initiated so as to be completed on or before January 11, 2017." (Docket Entry No. 33). The plaintiff seeks to modify the current schedule as follows: (1) fact discovery to be completed on May 1, 2017; (2) expert identities to be disclosed on or before July 1, 2017; and (3) "the expert discovery cut-off to be extended to September 1, 2017." The plaintiff contends that the reasons for requesting the schedule modifications are: (a) it "did not anticipate that The Mill would take three months to produce a single document" and "fight tooth and nail to avoid its discovery obligations" and it is still producing documents; (b) "significant third party discovery is contemplated," for which the January 11, 2017 deadline does not provide sufficient time; (c) expert discovery will not be completed by January 11, 2017; and (d) the jurisdictional discovery ordered by the assigned district court "may not be completed by January 6, 2017," the date on which the status report is due regarding jurisdictional discovery. It is not clear why the plaintiff seeks to have "the fact discovery cut-off" and "the expert discovery cut-off be extended"

because the May 18, 2016 scheduling order does not distinguish between the fact and expert discovery. The plaintiff did not explain the relevance of the jurisdictional discovery ordered by the assigned district judge in connection with The Mill (Facility) Limited's motion to dismiss to the discovery in this case, or what impact, if any, such discovery might have on the discovery in this case. Although the plaintiff contends that it can only complete third-party discovery after The Mill produces documents identifying the third parties that received the plaintiff's work product, it does not explain why it needs the amount of time requested in its motion to complete that work. Nonetheless, the plaintiff demonstrated that it acted diligently in connection with its attempts to obtain discovery from The Mill, establishing good cause to modify the schedule. The Court finds that modifying the May 18, 2016 scheduling order is warranted as follows: (1) all discovery, of whatever nature, shall be initiated so as to be completed on or before March 7, 2017.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to compel, Docket Entry No. 65, is granted, in part, and denied, in part. On or before January 23, 2017, The Mill shall produce to the plaintiff, as explained above: (1) its responses to the plaintiff's document request Nos. 1, 3, 14, 16, 18, 24 and 51; and (2) the information contained in the spreadsheet produced by The Mill previously in its native format, as instructed by the plaintiff. The May 18, 2016 scheduling order is modified as follows: all discovery, of whatever nature, shall be initiated so as to be completed on or before March 7, 2017.

Dated:   New York, New York
         January 17, 2017

SO ORDERED:

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE